FILED
2009 Jul-24  AM 08:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 7:08-CR-339-VEH-PWG** |
| | ) | |
| **MICHAEL ANTHONY WATSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## <u>ORDER</u>

Before the Court is the Magistrate Judge's Findings and Recommendation (Doc. 15) as to the Defendant's Motion to Suppress Evidence. (Doc. 11.) On June 3, 2009, the Government filed a Response. (Doc. 12.) On June 11, 2009, the Defendant filed a Reply. (Doc. 14.) Also before the Court is the Defendant's Objections to Magistrate's Report and Recommendation. (Doc. 17.) For the reasons discussed below, the Court will adopt the findings of the Magistrate Judge, accept the recommendation, overrule the Defendant's objections, and deny the motion to suppress evidence.

I.      **FACTUAL AND PROCEDURAL HISTORY**

The sole defendant in this case, Michael Anthony Watson ("Watson") is charged with one count of possession with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack cocaine) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).  (Doc. 1.)  Watson has sought to suppress all evidence seized during a May 13, 2008, warrantless search of Watson's automobile in Tuscaloosa, Alabama.

Magistrate Judge Paul W. Greene held a suppression hearing on June 9, 2009.  At the hearing, Officer John Busby of the Tuscaloosa, Alabama Police Department, testified that he stopped the vehicle driven by Watson after observing Watson make two turns on public roads without signaling the turns.  (Hr'g Tr. at 5:19-21; 7:6-18; 11:3-25; 22:18-23:1.)  During the traffic stop, Busby "noticed [Watson] had a paper sack with, like, a bottle on the passenger's seat."  (*Id*. at 7:23-25; 25:21-24.)  Busby asked Watson what it was and that Watson said it "wasn't his, that his cousin left it in the vehicle."  (*Id*. at 7:25-8:1; 25:25-26:5.)  Watson gave the sack to either Busby or another officer who had arrived, or else Busby grabbed the bottle that was in the passenger seat in the paper bag.  (*Id*. at 8:8-10; 19:23-20:1; 26:5-8.)   Busby determined that it was vodka.  (*Id*. at 8:9-10.)  Watson was under 21 years old.  (*Id*. at 8:10-11; 20:24-21:1.)  Busby asked Watson if he could search Watson's vehicle,

and Watson said that he could.  (*Id*. at 8:1-3; 19:13-17; 24:23-25.)  Watson got out of the car and stood with another officer.  (*Id*. at 8:3; 8:7-8;.)  Busby searched the vehicle and, in the trunk of the vehicle, found the crack cocaine which is the subject of the indictment.  (*Id*. at 8:3-4; 8:18-9:4.)

Watson also testified.  He testified that he was familiar with the area where he was stopped.  (*Id*. at 28:21-24; 29:3-5.)  He testified that a vehicle that "resembled" Busby's vehicle passed him before Busby stopped him.  (*Id*. at 30:15-31:3; 37:15-23.)  Watson testified that Busby told him that he had pulled him over for not using the turn signal.  (*Id*. at 31:20-21.)  Watson told Busby that he was "pretty sure" that he did use it.  (*Id*. at 31:22-23; 39:12-19.)  At the hearing, Watson initially testified that he gave his turn signal (*id*. at 32:5-9), but then he testified that "absolutely sure and pretty sure" were the "same thing," (*id*. at 39:12-19) and that he was "pretty sure" he made his turn signal (*id*. at 41:11), thereby making his earlier testimony equivocal. Watson told Busby he had a bottle of vodka and handed the vodka to Busby through the window of Watson's vehicle and after that Watson got out of the car.  (*Id*. at 32:20-33-3.)  Watson denied giving Busby consent to search his vehicle.  (*Id*. at 33:13-15; 34:22-24; 39:5.)

At the end of the hearing, Judge Greene told the parties "what is not at issue in this case." (*Id*. at 42:18-43:19.)  Judge Greene stated "[t]here are two fact issues.

One deals with whether or not the defendant did or did not use a turn signal, and the second is whether he did or did not consent to the search of the vehicle." (*Id*. at 43:20-23.)  He further stated his observations as follows.

> No. 1, I find Officer Busby's testimony that Mr. Watson did not use his turn signal and that there was probable cause to believe that a violation of the traffic laws had occurred, and that applies certainly to the turn signal for the turn onto Albright, but it also applies to the turn signal for the turn onto McFarland, and I do not credit Mr. Watson's testimony on that question.  <u>There are a variety of reasons for that, but part of it is ... the equivocal response of Mr. Watson.</u>
>
> The second thing is that I also credit Officer Busby's statement that Mr. Watson consented to the search of the vehicle, and that has a number of reasons, one of which it simply appears in the report and if this were a *Gantt* prophylactic attempt to justify a search, that might have been added, but this event took place before *Gantt* was decided and there is affirmative indication that there was a consent to search, ... and I do not credit Mr. Watson's testimony <u>with respect to that</u> for a variety of reasons.  <u>One, simply having observed him testify, I do not find his testimony to be credible.</u>

(*Id*. at 44:2-21.)  (Emphasis supplied.)

Judge Greene then stated: "With the consent and solely on the basis of the consent, there was authority to search the trunk of the vehicle, and the seizure of the crack cocaine in the trunk of the vehicle was proper." (*Id*. at 22-25.)

Judge Greene reiterated his credibility findings as follows: "So with respect to the fact questions, I do not believe the defendant's testimony that he used a turn signal.  I believe Officer Busby's testimony that he did not.  I do believe Officer Busby's testimony that Mr. Watson consented to the search of the vehicle.  I do not

*believe* Mr. Watson's statements to the contrary." (*Id.* at 46:14-19.)

Judge Greene gave the parties two days to file briefs.  Watson timely filed his Reply (to the Government's Response, which had been filed on June 3, 3009). (Doc. 14, filed June 11, 2009.)

After considering the testimony elicited at the hearing and the parties' briefs, Judge Greene entered his findings and recommendation.  (Doc. 15.)  Specifically, Judge Greene found that the Motion to Suppress Evidence should be denied.  Watson timely filed his objection.  (Doc. 17.)

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 636 (b)(1)(B), a district court judge "may designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of facts and recommendations for disposition."  The magistrate judge's role under this provision extends to motions to suppress in criminal cases.  *Id.*  Within ten days of being served with copies of a report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."  28 U.S.C. § 636(b)(1).  "A [district] judge . . . shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *Id.*  In making a "*de novo* determination" the Court is not

5

required to conduct a *de novo* evidentiary hearing, rather, the statute permits "whatever reliance a district judge, in the exercise of sound judicial discretion, cho[oses] to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 677 (1980). Exercising its discretion, the Court elects not to hold an additional evidentiary hearing. The Court has reviewed <u>all</u> materials in the record, including the motions and briefs submitted by the parties, the transcript of the hearing before Judge Greene, and Judge Greene's findings and recommendations.

## III.   ANALYSIS

At the beginning of the hearing, Judge Greene correctly summarized the issues before the court and the government's burden:

> This matter proceeds this morning upon the motion of the defendant to suppress evidence obtained during a May 13, 2008, search of a vehicle. The government concedes that the search was without a warrant, which implicates the Fourth Amendment and, of course, requires the government to show that the search was within one of the recognized exceptions to the Fourth Amendment requirement [of a warrant]."

(Hr'g Tr. at 3:9-16.)

The hearing transcript fully supports Judge Greene's findings. Judge Greene credited Officer Busby's testimony that he observed the defendant turn twice without using the vehicle's turn signal, as required by Alabama law, and found Defendant Watson's testimony to be "equivocal" and not believable. This Court agrees that

6

Watson's testimony on this point was equivocal.  Judge Greene's recommendation as to this fact issue was correct.

Judge Greene also credited Officer Busby's testimony that Defendant Watson gave consent to a search of his vehicle, which resulted in crack cocaine being found in the vehicle's trunk, and did not credit Defendant Watson's (unequivocal) testimony that he did not give consent to the search.

Watson's objections are based upon his argument that Judge Greene, erroneously and contrary to Rules 104(d) and 611 of the Federal Rules of Evidence, allowed the government to ask the Defendant questions that exceeded the scope of defense counsel's direct examination and that "related to the underlying charge itself." (Doc. 17 at 1.)  The Defendant then argues that this line of questioning "improperly influenced the factual determinations made by Judge Greene in his report and recommendation; and therefore, said factual determinations should not be adopted by this Court." (*Id*. at 2.)  The Defendant cites *United States v. Roth*, 854 F.Supp. 620 (D.C. Neb. 1994) as persuasive authority.  While the Court has read *Roth*, and agrees with it, it notes that the issues before the Court on Defendant's objection cannot be decided by *Roth*.

The issues before the Court are as follows.  First, did Judge Greene err in allowing the government to ask the Defendant questions on cross examination about

why he was in Tuscaloosa on the night of his arrest, prior times he had been at the Economy Inn, which is located at 3600 East McFarland Blvd. in Tuscaloosa, Alabama, Motel and is in "a high drug concentration" area where Officer Busby had previously "made arrests related to narcotics" (Hr'g Tr. at 4:24-5:5), after defense counsel elicited testimony from the Defendant, on direct examination, that he was "familiar with the Masters Economy Inn located in Tuscaloosa on McFarland Boulevard", that he "[h]ad stayed there prior to [May 13, 2008]," that he was "familiar with the surrounding roads and the parking lot," and that he "was indeed at this parking lot on May 13, 2008." (*Id*. at 28:22-29:8.)

The second issue is whether there is any indication that the objected-to line of questions "improperly influenced the factual determinations made by Judge Greene in his report and recommendation." (Doc. 17 at 2.)

The question that defense counsel objected to was, "Why were you in Tuscaloosa that evening?" (Hr'g Tr. at 35:6-8.) Magistrate Judge Greene overruled the objection because defense counsel had asked Watson "if he stayed at that motel on other occasions." (*Id*. at 35:9-10.) However, the Defendant is arguing that this entire line of questioning about why the Defendant was in Tuscaloosa on May 13, 2008, and why he was at the Economy Motel that evening was improper and further, that it "improperly influenced" Judge Greene's factual determinations.

8

A.      <u>Rule 104(d) is broader than Rule 611(b)</u>.

The Defendant has objected to the line of questions under Federal Rules of

Evidence 104(d) and 611(b).  These Rules are not conterminous.

Rule 104(d) provides:

> (d) Testimony by accused. The accused does not, by testifying
> upon a preliminary matter, become subject to cross-examination as to
> other issues in the case.

Fed. R. Evid. 104(d).

Rule 611(b) provides:

> (b) Scope of cross-examination. Cross-examination should be
> limited to the subject matter of the direct examination and matters
> affecting the credibility of the witness. The court may, in the exercise of
> discretion, permit inquiry into additional matters as if on direct
> examination.

Fed. R. Evid. 611(b).

Rule 611(b) expressly uses the word "should" and, thus, leaves to the trial

court's discretion the issue of how much to limit the scope of cross-examination.

Generally, courts have interpreted this discretion broadly and have been upheld,

absent an abuse of discretion.

The distinction between Rule 611(b) and Rule 104(d) has been explained as

follows.

> Where an accused testifies in his own behalf, Rule 611(b) sets forth a
> subject matter limitation on the permissible scope of cross-examination.
> However, since the limit created by that rule is both vague and subject

9

to discretion, the question frequently arises as to whether an accused may assert his privilege against self-incrimination as a further limit on cross-examination. More precisely, the issue is the extent to which the accused's voluntary testimony on direct examination waives the privilege to refuse to answer questions on cross-examination. <u>The drafters made it clear that Rule 611(b) does not address this issue, which is a matter of constitutional law rather than a question of determining the order of evidence.</u> In two other provisions, the Evidence Rules address related aspects of this issue.[FN3]

> [FN3] Two provisions
>
> Rule 104(d) limits the cross-examination of an accused who has testified only as to preliminary matters and Rule 608(b) establishes that a witness does not waive the privilege where his testimony relates only to credibility. See vol. 21, § 5057 regarding Rule 104(d) and § 6121 in this volume regarding Rule 608(b).

Two approaches to determining the extent of waiver have attracted significant support.[FN4] Under the first approach, an accused who has testified waives his privilege as to all relevant matters, except those relating only to his credibility, even though the scope of his direct-examination testimony may have been limited.[FN5] <u>Under the second approach, the waiver extends only to matters "reasonably related" to the accused's testimony on direct examination.[FN6]</u>

<u>The weight of federal judicial authority seems to favor the second approach.</u>[FN7] However, the cases rarely consider the meaning of "reasonably related" in light of the policies pertinent to the privilege and the question of waiver. Instead, they commonly assume that the "reasonably related" standard is coincident with the proper scope of cross-examination set by the "subject matter" limitation of Rule 611(b).[FN8] Some decisions go so far as to conclude that courts have discretion to determine the scope of the accused's waiver, thereby making the overlap with Rule 611(b) complete.[FN9] The frequent result is that the scope of waiver under the "reasonably related" standard

is the same as that under the first approach.[FN10] This is not surprising since, as supporters of the first approach have noted, all the facts in a case are logically related.[FN11]

Measuring the scope of the privilege waiver by reference to Rule 611(b) is inconsistent with the express intent of the drafters.[FN12] Moreover, the different policies underlying Rule 611(b) and the "reasonably related" standard should mean that the restrictions place different limitations on cross-examination. The policy of Rule 611(b) is to prevent digressions and diversions during cross-examination from interrupting the direct examiner's case and thereby confusing the jury.[FN13] The cost of limiting cross-examination under this rule is usually not great; the testimony is not lost but deferred until the cross-examiner's case.[FN14] At the same time, however, the danger that the jury will be confused by the cross-examination is frequently not great and may be outweighed by other considerations.[FN15] As a consequence, under Rule 611(b) courts have considerable room for judgment in determining the extent of the subject matter of the direct and sometimes even have discretion to abandon the limitation entirely.[FN16]

In contrast, the stakes are both different and greater when measuring the extent of a Fifth Amendment waiver. The policy behind recognizing a waiver is to protect the truth by subjecting the story the accused has told on direct examination to the test of cross-examination.[FN17] This is a question of whether, not just when, the prosecution will be able to extract this testimony since, if the privilege protects the accused against cross-examination, it also protects the accused from being called as a witness in the prosecution's case. However, recognition of a waiver that is broader than necessary to protect the truth also has significant costs since the right against self-incrimination is a constitutional principle thought fundamental to fair criminal procedure.[FN18] Further, where an accused refuses to answer questions on cross-examination after being ordered to do so, his direct-examination testimony may be stricken.[FN19] Thus, there is normally more at stake in determining the proper scope of a Fifth Amendment waiver than there is in fixing the scope of cross-examination under Rule 611(b).

<u>This means that the scope of a Fifth Amendment waiver should be fixed not by Rule 611(b)'s "subject matter" standard but, rather, by the extent to which cross-examination is necessary to test the truth of the accused's direct examination.[FN20] It also means that there is no discretion to ignore the dictates of this policy in the same way Rule 611(b) gives courts discretion to avoid the subject-matter limitation. Thus, where an accused testifies on direct to limited matters and omits reference to other relevant facts, cross-examination as to those omitted facts could not be justified merely on the grounds they have some logical connection to the subject of the direct examination.[FN21] A waiver of privilege would be found and cross-examination permitted only where the omitted facts tended to show the untruthfulness of the matters to which the accused testified or the inferences suggested by those matters.[FN22]</u> Without such a policy compass guiding the application of the "reasonably related" standard, there is no principled way to determine the "reasonableness" of the connection between the direct and cross-examinations and that standard becomes merely a formula for arbitrariness.

28 Moore's Federal Practice and Procedure § 6166 (emphasis supplied)
(all footnotes except footnote 3 omitted).

B.    <u>The Fifth Amendment and Rule 104(d)</u>.

Basically, Rule 104(d) preserves to an accused who testifies on preliminary matters his or her Fifth Amendment right not to testify on "other issues."

Rule 104(d) does not bar all cross-examination of a defendant who takes the stand in a preliminary fact hearing; only cross-examination about "other issues in the case."[FN39] As the Advisory Committee Note explains, he can be cross-examined about the preliminary facts to which he has testified, but not "generally"[FN40]; that is, "cross-examination as to any other issue."[FN41] For example, the accused can testify that the police beat him until he confessed and be cross-examined about the beating but he cannot be asked whether the confession was true because that fact is not germane to the voluntariness of the confession.[FN42] On the other hand, if he testifies on the admissibility of a dying

12

declaration that the declarant could not have had personal knowledge because he shot him in the back, he could be cross-examined about the shooting.[FN43]

21A Moore's Federal Practice and Procedure § 5057 (footnotes omitted).

Thus, the question for this Court to answer is whether Judge Greene allowed the government to question the Defendant about "issues" other than the issues that he testified about on direct.

C.   While the objection should have been sustained, the improperly admitted testimony did not influence Judge Greene's decision.

Defense counsel argues that "the direct examination did not touch any of the essential elements of the crime for which the Defendant is charged, nor did it focus on the Defendant's purpose for being in Tuscaloosa.  It dealt with the facts surrounding the traffic stop, and whether the Defendant was familiar with the motel and his physical knowledge of the surrounding area." (Doc. 17 at 2).  After reviewing the transcript, this Court agrees with these statements.  Defense counsel then argues that, "in the present case, the government ... was allowed to cross-examine the Defendant beyond the scope of the direct examination and about other than preliminary matters, namely[,] his purpose for being in the Tuscaloosa area." (*Id*. at 3).  This Court also agrees with this statement to the extent that it states an objection under Rule 104(d).  The government was improperly allowed to cross-examine the Defendant about "issues" other than the issues that he had testified about on direct

13

examination.

That is, this Court agrees that defense counsel's objection to the question "Why were you in Tuscaloosa that evening?"[1] should have been sustained under Rule 104(d).   However, because it is clear from the transcript that nothing in the erroneously admitted testimony had any impact on Judge Greene's determination of the two fact issues he decided, the Court will overrule the objections, adopt Judge Greene's Report and Recommendation, and deny the motion to suppress evidence.[2]

> **1.    The improperly admitted testimony did not influence Judge Greene as to the fact issue relating to the turn signal.**

The first fact issue that Magistrate Judge Greene decided was whether or not the Defendant used a turn signal.  Judge Greene explicitly stated that one reason he did not believe the Defendant's testimony on that fact issue was that the Defendant's testimony was "equivocal."  (Hr'g Tr. at 44:10).  As stated above,[3] this Court agrees that the Defendant's testimony on this fact issue was equivocal.   The Court independently and *de novo* finds that Officer Busby's testimony was credible and that

---

[1]   And, indeed, the entire line of questions in the hearing transcript at 35:6-19; 36:1-15; 40:1-41:17.

[2]   It is not clear to the Court that the Defendant objected to all of the testimony that the Court has determined was improperly admitted.  For the purposes of its analysis, the Court has assumed that the Defendant's objection applied to all of such testimony.

[3]   *See* p. 3, *supra*.

the Defendant's equivocal statements were not credible.

>    **2.    The improperly admitted testimony did not influence Judge Greene as to the fact issue relating to consent.**

The second fact issue that Magistrate Judge Greene decided was whether or not the Defendant gave his consent to the search of his automobile.  Judge Greene gave a specific reason for <u>believing Officer Busby</u> as to this fact issue.  Judge Greene stated:

> "[t]he second thing is that I also credit Officer Busby's statement that Mr. Watson consented to the search of the vehicle, and that has a number of reasons, one of which it simply appears in the report and if this were a *Gantt* prophylactic attempt to justify a search, that might have been added, but this event took place before *Gantt* was decided and there is affirmative indication that there was a consent to search....

*Id*. at 44:11-18.

The fact that Judge Greene did not give a specific reason for <u>disbelieving the Defendant</u>[4] does not take away from the specificity of his reason for believing Officer Busby.  Officer Busby's testimony regarding consent was diametrically opposed to the Defendant's.  That is, no reasonable person could believe them <u>both</u> on that fact issue.  Thus, even if the improperly admitted testimony might otherwise have been the reason that Judge Greene found the Defendant's "testimony with respect to that"

---

[4]  Magistrate Judge Greene simply stated, "I do not credit Mr. Watson's testimony with respect to [the consent issue] for a variety of reasons.  One, simply having observed him testify, I do not find his testimony to be credible."  Hr'g tr. 44:20-21.

(e.g. consent) not credible, "simply having observed him testify," given Judge Greene's explicit reasons for believing Officer Busby, that improperly admitted testimony could not have influenced Judge Greene's resolution of this fact issue. Further, this Court *de novo* agrees that Officer Busby's statements, which were supported by the written report, are more credible than the Defendant's bald assertion to the contrary. Further, Judge Greene had the opportunity to observe the demeanor of Officer Busby and the Defendant when they each testified, and this Court will not second-guess Judge Greene's determination that Officer Busby was more credible than the Defendant.

## IV.   CONCLUSION

Therefore, in light of the above, the Court **ADOPTS** the findings of the Magistrate Judge and **ACCEPTS** his recommendation. It **OVERRULES** the Defendant's objections to the findings and recommendation. The Motion to Suppress Evidence (doc. 11) is **DENIED**.

**DONE** and **ORDERED** this the 24th day of July, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

16